**HUDSON TRANSIT LINES, Inc. v. UNIT-ED STATES et al. (ADIRONDACK TRANSIT LINES, Inc., Intervenor)**

United States District Court
S. D. New York.
April 15, 1948.

James F. X. O'Brien, of Newark, N. J., for plaintiff.

Daniel H. Kunkel, of Washington, D. C., for Interstate Commerce Commission.

Edward Dumbauld, of Washington, D. C., for the United States.

Martin J. Kelly, Jr., of New York City, for intervenor-defendant.

Before SWAN, Circuit Judge, and RIFKIND and RYAN, District Judges.

SWAN, Circuit Judge.

This is a suit to set aside an order of the Interstate Commerce Commission dated July 8, 1947 which authorizes the issuance of a certificate of public convenience and necessity to Adirondack Transit Lines, Inc. Adirondack is a motor carrier engaged in the transportation of passengers by motor bus over authorized routes between New York City and points in northern and central New York. The plaintiff, Hudson Transit Lines, is also a motor carrier engaged in the transportation of passengers by motor bus over authorized routes. From Paramus, N. J. to Monroe, N. Y., Hudson operates over the same route as does Adirondack. As a competitor it has an interest which gives it standing to bring this suit. Alton R. Co. v. United States, 315 U.S. 15, 19, 62 S.Ct. 432, 86 L.Ed. 586.

The suit is brought pursuant to 28 U.S.C.A. §§ 41(28),[1] and 43 to 48[2] and 49 U.S.C.A. § 305(g). The court has jurisdiction. Pursuant to 28 U.S.C.A. § 45a[3] Adirondack was properly allowed to intervene as a defendant.

The Commission's order of July 8, 1947 which the suit seeks to set aside was entered in a proceeding by which Adirondack sought under 49 U.S.C.A. § 307 an extension of its route between Weehawken, N. J. and New York City that would permit it to use the Lincoln Tunnel and to abandon operations via the West Shore-42nd Street Ferry. The order grants such permission but imposes a restriction on Adirondack's operations via the Tunnel, limiting it to transportation of passengers moving between New York City and points north of Paramus, N. J. This is a modification of an earlier order, dated July 3, 1946, in the same proceeding which restricted Adirondack to the transportation of traffic moving between New York City and points north of Monroe, N. Y. The later order was made upon the same record as the earlier, without any additional evidence, and Hudson contends that the Commission's removal of the restriction from Monroe to Paramus is (a) unsupported by necessary basic findings, (b) unsupported by substantial evidence, and (c) unlawfully discriminatory. By its brief, however, Hudson concedes that it will be satisfied if the northern limit of the restriction is set at the intersection of New York Highways 17 and 32 at Harriman, N. Y., which is a few miles south of Monroe.

The history of Adirondack's operations antedating the proceeding in which the order under attack was issued may be summarized as follows: On June 4, 1937 Adirondack received a "grandfather" certificate, pursuant to 49 U.S.C.A. § 306, for its operations over described routes which led from New York City to Weehawken, N. J. and thence to Kingston, Saugerties, Saranac Lake and Massena, N. Y. Until the opening of the Lincoln Tunnel in December 1937 Adirondack used the ferry from Weehawken to cross the Hudson River. After the Tunnel was opened it used the Tunnel in the belief that its grandfather certificate authorized such use. In Lincoln Tunnel Applications, 12 M.C.C. 184, 196, the Commission ruled that use of the Tunnel was such a change in operations as to require a certificate of public convenience and necessity. Following this ruling, the Commission held that Adirondack's use of the Tunnel was unlawful; and its decision was sustained in Adirondack Transit Lines v. United States, D. C.,

[1] 1948 Judicial Code, 28 U.S.C.A. § 1336.

[2] 1948 Judicial Code, 28 U.S.C.A. §§ 1253, 1398, 2101, 2284, 2321–2325.

[3] 1948 Judicial Code, 28 U.S.C.A. § 2323.

59 F.Supp. 503, affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393. Thereafter Adirondack continued its use of the Tunnel under temporary authority granted by the Commission. Thus since the opening of the Tunnel Adirondack has not operated by way of the Ferry.

On July 13, 1944, Adirondack initiated the proceeding here involved by filing an application for a certificate of public convenience and necessity, in order to obtain permission to substitute the Tunnel route for the Ferry route. After a hearing the Examiner recommended issuance to Adirondack of a certificate restricted to the carriage of traffic destined to or from points north of the New York-New Jersey state line, which is 31 miles from the city of New York. Both Adirondack and various protestants including Hudson filed exceptions as to the nature and extent of the restriction. The Examiner's recommendation was modified by the Commission, Division 5, which by order of July 3, 1946, set the restriction at Monroe, N. Y., a point 46 miles from the city. The Commission as a whole approved this decision on January 6, 1947, by denying Adirondack's petition for reconsideration. Thereafter, upon a second petition for reconsideration, the Commission on April 7, 1947, reopened the proceeding and sent it back to Division 5 to determine upon the existing record whether and to what extent the restriction upon Adirondack's service should be modified. On July 8, 1947, Division 5 issued its report and order modifying its former order of July 3, 1946, so as to set the northerly restrictive point at Paramus, N. J. instead of Monroe, N. Y. This point is approximately 17 miles from New York City. The protestant Hudson moved for reconsideration and further hearing, but this was denied by the Commission by order dated October 13, 1947.

Hudson's suit seeks to set aside both the order of July 8th and the order of October 13th, which in effect affirmed the July 8th order. Its complaint is directed against only that part of the order of July 8th which authorizes Adirondack to engage in passenger transportation between New York City and points in New Jersey and New York on its authorized route between Paramus, N. J. on the south and Monroe, N. Y. on the north. Over this segment of the route Adirondack's service is competitive with Hudson's short-haul and commuter service. While the competition will not be serious so long as Adirondack continues, as it has in the past, to accept passengers to or from points within this segment only when there are vacant seats in its long-haul busses, Hudson fears that under the certificate authorized by the order of July 8th Adirondack will inaugurate a short-haul and commuter service that will destroy the value of Hudson's same type of service which has been built up at large expense during the last ten years and has only recently become profitable.

The plaintiff does not question so much of the order of July 8, 1947 as will permit Adirondack to route its long-haul busses through the Lincoln Tunnel. But the order will also enable Adirondack to inaugurate a short-haul and commuter service via the tunnel between New York City, on the one hand, and, on the other hand, points intermediate between and inclusive of Monroe, N. Y. and Paramus, N. J. This will be a new service. The issue for our decision is whether the Commission's ultimate finding that the public convenience and necessity require such service is supported by adequate subordinate findings and by substantial evidence. See Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 488, 489, 62 S.Ct. 722, 86 L.Ed. 971; United States v. Pierce Auto Freight Lines, 327 U.S. 515, 533, 66 S.Ct. 687, 90 L.Ed. 821; Inland Motor Freight v. United States, D.C.E.D.Wash., 60 F.Supp. 520, 524, 525.

The case is unusual in that upon the same record the Commission has reached two contradictory conclusions. Its report and order of July 3, 1946 found that public convenience and necessity did not require such service, since it set the northern limit of the restricted segment at Monroe. The report notes that Adirondack, although operating through the tunnel since December 1937, has catered chiefly to passengers requiring long-haul operations between New York City and authorized northern and mid-New York points;

that on the basis of 4,039 trips during April, July, October and December 1944, Adirondack averaged less than 1.5 passengers per trip between Monroe and Weehawken including intermediate points, on the one hand, and New York City on the other. It says that "No public witnesses testified nor has any inadequacy of service by protestants between the foregoing points via the Tunnel been established," and, "considering the evidence as a whole," the Commission states its opinion that the application should be granted, "subject to the restriction that operation over the proposed route shall be limited to the transportation of traffic moving to or from points in New York north of Monroe on applicant's presently authorized routes." The above findings are supported by the evidence and fully justified the limitation imposed by the order of July 3, 1946. Without changing the subordinate basic findings which support the ultimate finding of lack of public convenience and necessity for unrestricted operation by Adirondack south of Monroe, the report and order of July 8, 1947 reverses that conclusion and substitutes the ultimate finding that unrestricted operation is required on so much of the route as lies south of Monroe and north of Paramus.

No clear reasons for such reversal are stated in the July 8th report. After referring to the earlier report and to the order of April 7, 1947 reopening the proceeding for reconsideration on the record as made, the report recites that "Facts set forth in the prior report will be restated only to the extent necessary to the disposal of the issue here presented." It then states what Adirondack "contends", namely, that the restrictive condition of the 1946 order is too severe, is unwarranted by the evidence, and will result in the loss of substantial revenue to it at points it has served for many years; but the report makes no direct findings as to the merit of such contentions. It next notes that Adirondack urges that the segment of its route between Paramus and Monroe is beyond the highly competitive, so-called "mass transportation", area and is rather sparsely settled, and it finds that the evidence supports this contention. What inference the Commission draws from this finding the report

does not state. The natural inference would seem to be that there was a greater need for Adirondack's short-haul service south of Paramus than north of it; yet the restriction is lifted only as to the segment of the route north of Paramus. The report then finds that Hudson would be the only bus operator providing substantial service between New York City and the points on the described segment throughout the greater portion of the year; but it makes no finding that Hudson's service would be inadequate, nor does it allude to the finding of the earlier report that no inadequacy of service had been established. It does not even suggest that an operation competitive with Hudson's would secure better service for the public.

The closest approach to stating reasons for the modification of the restriction is contained in the following paragraph of the report. "Although applicant's routes are rather extensive, the largest number of its bus trips have been and are between New York City and Kingston, N. Y., a distance of approximately 100 miles. Applicant operates from and to the same terminal in New York City as does Hudson Transit. To require applicant to operate approximately 50 miles, one-half of the distance covered by the majority of its trips, without providing transportation to the public from and to New York City not only would appear unwarranted and arbitrary but would result in wasteful transportation and inconvenience to the public. When applicant's busses are leaving the New York City terminal, for example, prospective travelers to points on the restricted segment would be required to wait for the later departure of protestant's busses traveling over substantially the same routes, and the same inconvenience would be suffered in the opposite direction from points on such segment to New York City. We think that the inconvenience to the public of the present restriction far outweighs any possible detrimental effect upon protestant which the modification sought by applicant might have. Such effect in any event should not be severe. Applicant has long transported passengers between New York City and many of the points south of Monroe. The modification sought by ap-

plicant would permit continuance of such service, increase travel facilities for the public, and, in our opinion, would permit more efficient operation which also would result in benefit to the public. While Hudson Transit fears that the sought modification would deprive it of substantial traffic and revenue, its fears are conjectural and unsupported by the evidence."

As noted in the earlier report, Adirondack carried on its long-haul busses an average of only 1.5 passengers per trip to and from the disputed segment of the route. Indeed, since Hudson is willing to have the northern point of the restricted segment fixed at Harriman, it argues that the passengers bound to and from Monroe should be excluded from the computation, and this would reduce the average per trip to less than one passenger. Hence the inconvenience to the public of having to wait for a Hudson bus can scarcely be thought substantial enough to establish a public need for additional service. Nor would it seem "wasteful transportation" for Adirondack's long-haul busses to operate through the restricted area with only 1.5, or less than one if the restriction stops at Harriman, vacant seats per trip. If it appears to the Commission "unwarranted and arbitrary" to prevent Adirondack from operating in the disputed segment in the same manner as it has heretofore operated, this could be accomplished by so wording the restriction as to permit the carriage of passengers to and from the disputed segment on long-haul busses, that is, busses destined from New York to Kingston or points north thereof and busses destined to New York originating at Kingston or points north thereof. This is all Adirondack's previous practice has been. But the new certificate will permit it to inaugurate short-haul and commuter operations without any finding of public need for such service or any inadequacy in existing facilities. And the statement that Hudson's fears are conjectural and unsupported by the evidence is not sustainable. The evidence shows without contradiction that if such service should be inaugurated in competition with Hudson's service of that type, neither carrier would find it profitable.

The Commission has frequently held that under § 207 of the Act, 49 U.S.C. A. § 307, there must be an affirmative showing not only that a common carrier service is required in the convenience of the public but also that it is a necessity, and that the latter element includes a showing that present facilities are inadequate. Pan-American Bus Lines, Operation, 1 M.C.C. 190, 203; Bluenose Bus Co. Ltd., Common Carrier Application, 1 M.C.C. 173, 176; Richard L. Richards, Extension of Operations, 6 M.C.C. 80, 81; Ohio Transportation Co., Common Carrier Application, 29 M.C.C. 513, 520; Royal Cadillac Service, Inc., Common Carrier Application, 43 M.C.C. 247, 259. The courts, too, have recognized inadequacy of existing facilities as a basic ingredient in the detemination of public "necessity". Inland Motor Freight v. United States, D.C.E.D.Wash. 60 F.Supp. 520, 524. See also Interstate Commerce Commission v. Parker, 326 U.S. 60, 69, 70, 74, 65 S.Ct. 1490, 89 L.Ed. 2051 and dissenting opinion of Mr. Justice Douglas. This does not mean that the holder of a certificate is entitled to immunity from competition under any and all circumstances. Chesapeake & O. R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824. The introduction of a competitive service may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing service. Interstate Commerce Commission v. Parker, supra. No such finding has here been made, nor is there any evidence to support such a finding.

It is true that evidence of past operations under color of right may be taken into consideration in determining the present or future public convenience and' necessity. Crichton v. United States, D.C. S.D.N.Y., 56 F.Supp. 876, 879, affirmed 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554; Inland Motor Freight v. United States, supra, 60 F.Supp. 520, 525. But as noted above the carriage by Adirondack of an average of 1.5 passengers per trip between the disputed segment and New York City (¾ of a passenger if Hudson's concession to Harriman is considered) can hardly be considered to be substantial enough to evidence a real need. "Substantial, as distinguished

from incidental, sporadic, or infrequent, service is required." United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480, 481, 62 S.Ct. 722, 726, 86 L.Ed. 971.

So much of the order of July 8, 1947 as authorizes Adirondack to inaugurate short-haul and commuter operations south of Monroe and north of Paramus is not based on any finding that the existing service is inadequate, or that the newly authorized operation will secure to the public improved service, and conflicts with the finding in the Commission's report of July 3, 1946 that no inadequacy has been established. Therefore this portion of the order must be set aside and the cause remanded to the Commission for such action as it may deem appropriate and in accordance with this opinion. It is so ordered We adopt as our findings of fact the findings of the Commission, Division 5, in its report and order of July 3, 1946. Our conclusions of law are stated in the foregoing opinion. Settle order on notice.