W. Howard **PINKETT**, Plaintiff,

v.

**UNITED STATES** of America and The Interstate Commerce Commission, Defendants.

Civ. A. 8313.

United States District Court
D. Maryland, Civil Division.

Oct. 4, 1955.

Francis W. McInerny and Macleay, Lynch & Macdonald, Washington, D. C., and William J. Little, Baltimore, Md., for plaintiff.

George Cochran Doub, U. S. Atty., James H. Langrall, Asst. U. S. Atty., and Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday and John H. D. Wigger, Special Assts. to the Atty. Gen., for the United States.

H. Neil Garson, Atty., Interstate Commerce Comm., and Samuel R. Howell, Acting Gen. Counsel, Washington, D. C., for Interstate Commerce Comm.

Before SOPER, Circuit Judge, and CHESNUT and THOMSEN, District Judges.

ROSZEL C. THOMSEN, District Judge.

In this suit W. Howard Pinkett, of Denton, Md., a common carrier engaged in the transportation of passengers in charter bus service, seeks to set aside an order of the Interstate Commerce Commission which found that present and future public convenience and necessity require that Estelle W. and C. Malcolm Cochran, of Middletown, Del. (applicants), be authorized to conduct charter bus operations over irregular routes beginning and ending in a small area in the State of Delaware and extending to all points in certain neighboring states. Pinkett contends that the Commission's order is invalid because it did not contain

a specific finding that the present facilities are inadequate; that the findings and conclusions are not supported by substantial evidence; and that he was denied administrative due process because a petition for reconsideration of a previous order of the Commission, filed by applicants or their attorney, was served on him and not on his attorney.

In February, 1950, the Cochrans applied for a certificate of public convenience and necessity authorizing interstate operations in the transportation of passengers and their baggage, beginning and ending in a defined area in Delaware, and extending to all points in Maryland, Virginia, Pennsylvania, New Jersey and the District of Columbia. A hearing was held in July, 1950, on the application as originally filed. A number of carriers, including Pinkett, intervened in opposition to the application, but the examiner recommended and the Commission authorized the grant of a certificate for a portion of the operations for which application had been made. Two other charter bus operators filed suit in this court to set aside the order of the Commission on the grounds, among others, that the applicants had failed to notify competitive parties of their application and that the examiner had not been qualified and appointed pursuant to the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. In Pinkett v. United States, D.C.1952, 105 F.Supp. 67, this court invalidated the order for the reasons stated above, and remanded the proceeding to the Commission for further action.

The Commission reopened the case and set it down for hearing de novo before an examiner in Wilmington, Del., on April 1, 1953. During the hearing, applicants amended the application to reduce its territorial scope, and some of the parties to the proceeding withdrew their opposition.

On August 31, 1953, the examiner issued his report, recommending that the application be approved. Pinkett filed exceptions to the examiner's report and recommended order on September 21, 1953. On May 27, 1954, the Commission,

Division 5, issued its report and order reversing the examiner and denying the application.

Referring to Pinkett, that report stated:

"* * * He has been and is in a position to provide charter service for practically all the organizations or groups supporting this application. He claims that his school buses have somewhat better seats and more leg room than the buses ordinarily used by operators of school buses. There is no doubt that he could provide the service, and the contention of the supporting organizations and groups that it would be inconvenient to contact him at Denton appears to be without merit particularly since none of the supporting organizations ever requested service of intervener, notwithstanding the fact that he has advertised in the area and actually solicited the traffic. Pinkett has equipment at Millington which is only a few miles from the origin area sought to be served by applicants. In addition, Stiltz and Red Star also have equipment available within approximately 20 miles of such area. Of the 8 supporting witnesses only three have actually used or called upon existing carriers to perform service in the considered area. Each of the latter witnesses admitted that the service, when used, was satisfactory."

Applicants filed a petition for reconsideration on June 30, 1954. Despite the fact that applicants and their counsel knew that Pinkett was represented by an attorney who had appeared for him in the proceeding, a copy of the petition was not served on Pinkett's attorney. A copy of the petition was, however, mailed to Pinkett himself. The attorney learned of the petition, and by letter to the Commission dated August 18, 1954, with a copy to counsel for applicants, requested that the Commission require applicants to serve a copy of the petition on him and to allow him time for reply. Neither the Commission nor counsel for appli-

cants acknowledged receipt of that letter, nor did applicants send him a copy of the petition. Pinkett's attorney, however, read the petition in the office of the Commission.

Some two months later, on October 20, 1954, Pinkett's attorney wrote the Commission requesting that applicants' petition be stricken, or, in the alternative, that the petition be denied "for the reason that my examination of its contents in the office of the Commission reveals that the matters raised and arguments put forward therein have been fully considered in the report of Division 5". Thereafter, the Commission, on November 8, 1954, reopened the proceeding for reconsideration on the existing record.

On January 17, 1955, the Commission, Division 5, in its report on reconsideration, reversed its prior decision and granted the application in accordance with the recommendations of the examiner. This report discussed the testimony at some length, and stated:

"On further consideration, we are persuaded that our findings in the prior report were not warranted by the facts of this case. Pinkett, the only carrier with equipment that could meet the public need for the relatively shorter trips involved, is located in Denton, which is a considerable distance from the territory in which these trips originate. At times he has equipment in Millington, which is somewhat nearer, but it is not clear that he has sufficient units stationed there to meet the requirements of groups in the involved origin area or that such equipment could be made available on short notice. Applicants, on the other hand, have adequate equipment readily available at all times and are conveniently located at Middletown. Their services and equipment have been found satisfactory. None of the persons supporting the application has used Pinkett's service, and there is no evidence that they would use such service even if the application is denied. There is no convinc-

ing evidence that a grant of the authority set forth in the findings will have a material adverse effect on existing carriers.

"On reconsideration, we find that the present and future public conveniences and necessity require operation by applicants * * * as a common carrier by motor vehicle of passengers and their baggage, * * in round-trip charter operations, beginning and ending at points in Delaware north of the New Castle-Kent County line * * * and south of the Chesapeake and Delaware Canal and extending to points in Maryland, Virginia, Pennsylvania, New Jersey, and the District of Columbia, over irregular routes; that applicants are fit, willing, and able properly to perform such service * * * ; that a certificate authorizing such operation should be granted; and that the application in all other respects should be denied."

On March 30, 1955, Pinkett's attorney filed a petition "for reopening, reconsideration and oral argument, or, in the alternative, for further hearing". Applicants replied thereto on April 15, 1955. The Commission, by order dated June 1, 1955, denied the petition "for the reasons that the finding by Division 5 is adequately supported by the evidence and is in accordance with the applicable law; oral argument is unnecessary; and further hearing is unwarranted". That was the Commission's final action, and Pinkett filed this suit on June 23, 1955.

The Cochrans filed their application under section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a). Subject to certain provisions not relevant here, that section authorizes the issuance of a certificate if it is found (1) that the applicant is fit, willing and able to perform the proposed service, and (2) that the proposed service, to the extent authorized is or will be required by the present or future public convenience and necessity.

The report and order of January 17, 1955, specifically made these findings.

But Pinkett contends that a certificate may not be issued unless the Commission makes an affirmative finding that existing services are inadequate to meet the needs of a shipping or passenger public, and such finding is supported by substantial evidence. He relies principally upon Hudson Transit Lines v. United States, D.C. S.D.N.Y., 82 F.Supp. 153, affirmed per curiam 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485. The opinion of Judge Swan in that case noted that both the Commission and the courts have recognized that inadequacy of existing facilities is a basic ingredient in the determination of public necessity. But the opinion also stated:

"* * * This does not mean that the holder of a certificate is entitled to immunity from competition under any and all circumstances. Chesapeake & O. R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824. The introduction of a competitive service may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing service. Interstate Commerce Commission v. Parker, supra [326 U.S. 60, 69–70, 65 S.Ct. 1490, 89 L.Ed. 2051]. No such finding has here been made, nor is there any evidence to support such a finding." 82 F.Supp. at page 157.

In the case at bar the Commission made the findings which were lacking in the Hudson case. They have been noted above, and need not be repeated here. They were based upon evidence which was sufficiently substantial to support the conclusions. Compared to the evidence of convenience and necessity presented in many cases before the Commission, the evidence in this case was relatively slight; that was because the authority sought was very modest, limited to charter bus service originating in a small rural area in part of one county in Delaware.

Undoubtedly the evidence on the question of convenience and necessity was subject to two possible interpretations. That is shown by the conflicting decisions of Division 5 on May 27, 1954, and January 17, 1955, respectively. The fact that Division 5 modified its earlier decision indicates that it gave the matter careful consideration, rather than the contrary. The decision of January 17, 1955, affirming the examiner and granting the application, was approved by the full Commission on June 1, 1955.

■ The weight and credibility of the evidence was for the Commission, which has had great experience in similar cases, and is expert in handling the problems involved. We are not unmindful of the fact that a possible loss of some $800 worth of business may be substantial to a man whose gross receipts from charter bus operations amount to only $16,000. But we cannot say that the Commission was not justified in its finding that "there is no convincing evidence that a grant of the authority * * * will have a material adverse effect on existing carriers". All of the carriers except Pinkett withdrew their objections. The small amount of bus business originating in the disputed territory supports the conclusion that he had not cultivated the field very assiduously. A review of the testimony supports the conclusion that the introduction of a competitive service, frequently used by people in the territory for intrastate trips, with headquarters at Middletown, in the heart of the territory, rather than thirty miles away, may well be in the public interest. This is particularly true in view of the nature of the service desired, involving mostly short trips organized by schools, churches and clubs in small towns and villages, where the number of people desiring to make a trip may not be known until the last moment, and the expense must be kept to a minimum.

Pinkett argues that the Commission erred in granting authority for service to any and all points in Pennsylvania, New Jersey and certain other states when the testimony referred only to possible trips to one or more points in those states. This argument has no force, in view of the very narrow limits of the territory of origin and the nature of the

service which is to be rendered. Who can tell whether the school children will want to visit Valley Forge as well as Independence Hall, Mount Vernon as well as the Capitol, or whether a school band or athletic team will be scheduled to visit one town or another?

We conclude that the decision of the Commission is in accord with the statute and is supported by substantial evidence.

Rule 22 of the General Rules of Practice, Interstate Commerce Commission, 49 U.S.C.A.Appendix, requires that all papers filed with the Commission be served upon all parties to the proceeding, and provides that "When any party is represented by a practitioner, service upon such practitioner will be deemed service upon the party." Pinkett contends that this rule violates the requirement of Section 17(3), Part I of the Interstate Commerce Act, 49 U.S.C.A. § 17(3), which permits the Commission to make or amend general rules or orders for the regulation of proceedings before it "which shall conform, as nearly as may be, to those in use in the courts of the United States." Rule 5(b) of the Federal Rules of Civil Procedure requires that whenever "service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court."

But we need not pass on that contention in this case, because even if the contention were sound, Pinkett suffered no prejudice in this case from the fact that the petition was not served on his attorney. It was served on Pinkett himself, promptly. Moreover, his attorney learned of the petition before it was acted upon, read it in the office of the Commission, and not only had ample opportunity to answer it, but did in fact answer it, contending that the matters raised and the arguments put forward therein had been fully considered in the report which applicants were asking the Commission to reconsider. Since Pinkett's attorney had entered his appearance and participated in the hearing, it would have been more courteous to serve the petition on him. But the service on Pinkett, as permitted by the letter of the rule, did not prejudice Pinkett in this case.

We will sign an order dismissing the complaint, with costs.