CAMPUS TRAVEL, INC. and Inter-County Motor Coach, Inc., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Hudson Transit Lines, Inc., Manhattan Transit Company, Cosmopolitan Tourist Co., Inc., Orange & Black Bus Lines, Inc., and Public Service Coordinated Transport, Intervenor Defendants.

The LONG ISLAND RAILROAD COMPANY and Pennsylvania Railroad Company, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. A. Nos. 63-2544, 63-2543.

United States District Court
S. D. New York.

Oct. 9, 1963.

Zelby & Burstein, New York City, Herbert Burstein, New York City, of counsel, for plaintiffs Campus Travel, Inc. and Inter-County Motor Coach, Inc.

Otto M. Buerger, Jamaica, N. Y., Richard H. Stokes, Jamaica, N. Y., of counsel, for plaintiffs Long Island R. Co. and Pennsylvania R. Co.

William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Attorney, Department of Justice, Washington, D. C., Robert M. Morgenthau, U. S. Atty., for United States of America.

Robert W. Ginnane, General Counsel, Leonard S. Goodman, Attorney, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

James F. X. O'Brien, Newark, N. J., and Samuel Weiss, New York City, for intervenor-defendants Hudson Transit Lines, Inc. and Orange & Black Bus Lines, Inc.

Robert E. Goldstein, New York City, for intervenor-defendants Manhattan Transit Co. and Cosmopolitan Tourist Co., Inc.

Mendes & Mount, New York City, and Richard Fryling, Maplewood, N. J., Harold Weideli, Jr., Maplewood, N. J., of counsel, for intervenor-defendant Public Service Coordinated Transport.

Before KAUFMAN, Circuit Judge, and CASHIN and BRYAN, District Judges.

PER CURIAM.

In two separate actions, the Long Island and Pennsylvania Railroads, and Campus Travel, Inc. and Inter-County Motor Coach, Inc., seek to set aside an order of the Interstate Commerce Commission authorizing the five intervening defendants to conduct interstate charter bus operations between points in Nassau and Suffolk Counties on Long Island and various points throughout the continental United States, in competition with plaintiffs, and for an injunction restraining its enforcement.[1] The actions were consolidated, and were heard by a special three-judge court convened pursuant to 28 U.S.C. §§ 2325 and 2284.

In light of the report of the Commission's Division, which may be found at 92 M.C.C. 586, we will assume familiarity with the relevant facts as set forth therein.[2] In essence, the plaintiffs in this action contend that the Commission's determination that the present and future public convenience and necessity warranted the authorization of the intervenors was arbitrary, capricious, and lacked support of substantial evidence in the record as a whole. Being mindful of our limited powers of review in matters left to the expertise and discretion of the Commission, United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Stott v. United States, 166 F.Supp. 851 (S.D.N.Y.1961), we find that the Commission's conclusions were supported by substantial evidence and hence must be upheld.

An examination of the record discloses ample justification for the Commission's findings. The total population of Nassau and Suffolk Counties had increased markedly in the years immediate-

1. Intervenors Manhattan Transit Company and Cosmopolitan Tourist Co., Inc., were authorized to operate charter trips between Nassau and Suffolk Counties and all points in the continental United States. Intervenors Hudson Transit Lines, Inc. and Orange and Black Bus Lines, Inc., were granted authority to carry charter passengers between Nassau and Suffolk and all states on the eastern seaboard, from Maine to Florida, including the District of Columbia. Intervenor Public Service Coordinated Transport was empowered to conduct charters between Nassau and Suffolk and points in virtually all states east of the Mississippi River, again including the District of Columbia.

2. On January 18, 1961, the trial examiner issued a report after a week of hearings in which all parties to this action participated. *Inter alia*, he recommended that the five intervenors, see Note 1,

supra, be granted limited authority to engage in interstate charter operations, in competition with plaintiffs Campus and Inter-County. On October 3, 1961, Division 1 of the Interstate Commerce Commission rejected these recommendations, and ordered that the applications of the intervenors be denied in their entirety. Upon reconsideration, Division 1, sitting as an appellate division, reversed the previous order and on January 16, 1963, granted the authority set forth in note 1, supra. This order of January 16, 1963, is challenged in the present action. On July 22, 1963, Division 1 reaffirmed its January order, denying the petitions of the plaintiffs herein for a rehearing. Finally, on September 6, 1963, the Commission refused to find that a question of "general transportation importance" was involved in these proceedings and thus denied plaintiffs' request for a hearing before the full Commission.

ly preceding the hearings, reaching approximately two million at the time of the decision in January 1963. Whereas neighboring New York City was serviced by upwards of 80 charter bus carriers, this large and rapidly expanding population was restricted to the two, admittedly small lines which instituted this action— Campus and Inter-County. Further, at least four of the intervenors had for many years prior to 1958 conducted considerable charter business on Long Island in the good-faith albeit mistaken belief that the right to do so was incident to their authorization to operate a similar service from New York City.[3] While this earlier activity may not conclusively establish the necessity for such service, cf. Inland Motor Freight v. United States, 60 F.Supp. 520, 526 (W.D.Wash. 1945), it is certainly competent evidence of need. Crichton v. United States, 56 F.Supp. 876, 879 (S.D.N.Y.1944) and cases cited therein. In addition, the Commission could quite properly infer that the limited facilities of the existing carriers would be insufficient to meet the needs of the many residents of Nassau and Suffolk. In this connection, the ICC found that Inter-County owned but six buses of the deluxe over-the-road type, only one of which was air-conditioned. Campus could boast only ten deluxe buses, and like Inter-County, was often compelled to lease additional equipment from other carriers.

Finally, the testimony of thirty-one public witnesses supported the applications of the intervenors. We need only consider the evidence supplied by one such witness here to manifest the correctness of the Commission's ultimate conclusion. Stanley Parker, the president of a tour-brokerage business, testified that his business in booking charter bus tours from Nassau and Suffolk had increased 500% in the five years immediately preceding the hearing, and that he had had "trouble" chartering buses in the year in which the field had been limited to Campus and Inter-County. This witness further noted that he had

chartered as many as 59 buses at one time, and he insisted that no one company—or even two companies—could possibly fulfill this demand alone.

The plaintiffs make much of the fact that the Commission felt compelled to reverse itself in these proceedings— that the Commission originally rejected the trial examiner's recommendations and decided, over the strong dissent of Commissioner Webb, to deny the intervenors the requested authority. We cannot see how this in any way detracts from the deference we must afford the Commission's ultimate conclusion. For one thing the first determination was never reviewed by this court and might well have been as the Commission itself subsequently concluded, in error. More basically, "substantial evidence" may well support two conflicting points of view. If we were to say that only one position in any given case could be supported by "substantial evidence," we would be depriving the Commission of the discretion afforded to it by law, and we would, in effect, be reviewing its determinations to see if the "correct" result had been reached. This we cannot and will not do.

Although it is not necessary to reach the point in view of our findings that *present* necessity has been established, and that the inadequacy of the existing carriers to meet the present need has been convincingly demonstrated, we question plaintiffs' assertion that the Commission is not empowered to grant the requested authority "merely" because of a clear showing of future necessity without affording the existing carriers an opportunity to meet the increased demand. In Lang Transp. Co. v. United States, 75 F.Supp. 915, 929 (S.D.Cal. 1948), the court emphasized that the "law is clear that future public convenience and necessity, as well as present public convenience and necessity, suffice under the statute to warrant action by the Commission in authorizing new motor carrier operations." We should add, moreover, that it is by no means firmly established

---

**3.** See Hudson Transit Lines, Inc., Extension—Long Island, N. Y., 76 M.C.C. 215 (1958).

that the Commission must make positive findings that the service provided by existing carriers is inadequate before new authority may be granted. The Lang court thought otherwise, and the court in Convoy Company v. United States, 200 F.Supp. 10, 13 (D.Ore.1961), specifically noted that "the fact that there is no finding of inadequacy of existing service, or that the existing service would not be injuriously affected, does not invalidate the order of the Commission." Admittedly, the opinion in Robbins v. United States, 204 F.Supp. 78 (E.D.Pa. 1962) appears to hold that inadequacy is a prerequisite to a finding of public convenience and necessity. Yet as the court noted in Hudson Transit Lines v. United States, 82 F.Supp. 153 (S.D.N.Y.), aff'd, 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485 (1948), a requirement of inadequacy "does not mean that the holder of a certificate is entitled to immunity from competition under any and all circumstances. * * * The introduction of a competitive service may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing service." 82 F.Supp. at 157.

In the present case, the Commission's findings were more than sufficient to support its conclusions that the requested authorization would greatly improve service without undue harm to the plaintiffs. Coupled with the findings that plaintiffs were inadequately equipped to meet the public need, this would appear to preclude the relief which is sought here.

Finally, at least one of the plaintiffs argues that the Commission erred in refusing a rehearing requested so that Campus and Inter-County could demonstrate that they had increased their facilities since the initial hearing to cope with the increase in potential demand. It has long been established that requests for rehearing are addressed to the sound discretion of the administrative body, and that a claim of new evidence will not justify a holding that the denial of a rehearing was an abuse of the agency's discretion. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420.

No grounds having been shown for vacating and setting aside the order and findings of the Commission, we therefore dismiss the complaints. Judgment will be entered accordingly.