**TRAILWAYS OF NEW ENGLAND, INC., a corporation and Worcester Bus Company, Inc., a corporation, Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants, and Emilio F. Canzano, Intervening Defendant.**

**No. 1711–64.**

United States District Court
District of Columbia,
Civil Division.

Oct. 2, 1964.

Roberts & McInnis and Bradley G. McDonald, Washington, D. C., for plaintiffs.

William H. Orrick, Asst. Atty. Gen., David C. Acheson, U. S. Atty., and John H. D. Wigger, Washington, D. C., for defendant United States of America.

Robert W. Ginnane, General Counsel, and Thomas H. Ploss, Washington, D. C., for defendant Interstate Commerce Commission.

Beverley S. Simms, Washington, D. C., and Mary E. Kelley, Boston, Mass., for Emilio F. Canzano, intervening defendant.

Before BURGER, Circuit Judge, and JONES and ROBINSON, District Judges.

ROBINSON, District Judge.

Emilio F. Canzano applied to the Interstate Commerce Commission for a certificate of public convenience and necessity empowering him to provide a door-to-door limousine-type passenger transport service beginning and ending in Worcester County, Massachusetts, and extending in special seasonal operations to racetracks in New Hampshire and Rhode Island and in charter operations to points in six northeastern states.[1] The plaintiffs resisted the application and the hearing examiner recommended denial of these requests.

Canzano's exceptions to the examiner's proposed report and order were referred to an employee board, denominated the Operating Rights Review Board, which found that "[t]he statement of facts in the examiner's report is complete and accurate in all material respects, and is adopted as our own," but, reaching different conclusions thereon, recommended an award of authority substantially as sought. Division 1 of the Commission, acting as an appellate division, denied the plaintiffs' petitions for reconsideration "for the reason that the findings of Operating Rights Review Board are in accordance with the evidence and applicable law", and their joint petitions for reopening of the proceeding for further hearing "for the reasons that protestants' statements with respect to the evidence they would introduce at a further hearing do not constitute a proper or sufficient basis for granting the relief sought".

The plaintiffs seek here an annulment of the Commission's final action. We hold that the action must stand.

I

We are presented initially with the contention that the Commission abrogated its adjudicatory responsibility and delegated its decision-making process to the Operating Rights Review Board. This position is joined with and partially rested upon the claim that Division 1 of the Commission failed to comply with the requirements of the Interstate Commerce Act[2] and the Administrative Pro-

---

1. The plaintiffs do not challenge the Commission's determination that authority is not required for Canzano's interstate transportation of passengers on behalf of mortuaries. At the hearing before us they conceded that the evidence warrants the Commission's grant to Canzano of authority to transport passengers to and from beano or bingo games in New Hampshire and Rhode Island.

2. "(1) Whenever an investigation shall be made by said Commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises; and in case damages are awarded, such report shall include the findings of fact on which the award is made." Interstate Commerce Act, § 14 (1), 49 U.S.C. § 14(1).

cedure Act[3] as to a statement of findings, conclusions and reasons for its decision. We do not agree.

■ By virtue of an amendment in 1961,[4] the Commission has statutory power to authorize reconsideration of a hearing examiner's recommended report and order by an employee board designated for the purpose. But neither the plaintiffs nor the Commission viewed the Board's decision as administratively final. Indeed, Division 1 of the Commission, convened as an appellate tribunal, reviewed the Board's determinations and sustained them as consonant with the evidence and the law. It was through the Division, rather than the Board, that the Commission finally spoke. We do not find in these circumstances either an abdication of the decisional function to the Board or a departure from the Commission's representations, made to the Congress in support of the 1961 amendment,[5] that the opportunity would be afforded for a review of an employee board's action by the Commission or an appellate division thereof.

■■ Nor do we deem the order denying reconsideration to be at variance with statutory mandates. The examiner's report set forth his findings of fact in some detail. The Board, in its report, expressly adopted his statement of facts and elaborated its own conclusions and reasons therefor. Division 1

of the Commission, in turn, denied the petitions for reconsideration on the ground that "the findings of the Operating Rights Review Board are in accordance with the evidence and the applicable law". The Division was not bound to a choice of the examiner's conclusions if those of the Board had substantial evidentiary support in the record.[6] Nor was it required to restate or paraphrase the quite adequate report of the Board which clearly it adopted as its own,[7] or "specify the weight given to any item of evidence or fact or disclose mental operations by which its decisions are reached."[8] The plaintiffs were sufficiently informed as to the basis for the action taken by the Division, and we do not perceive any obscurity to hamper our function in this case. We find that the statutory standards were met.

## II

Both plaintiffs hold regular-route and incidental charter authority for the operation of buses within the territory involved in this litigation. Plaintiff Worcester Bus Company, Inc., is additionally authorized to conduct round-trip bus operations between Worcester County and the involved racetracks and seasonal limousine operations between Worcester County and two of these tracks. Plaintiff Trailways of New England, Inc., also possesses authority to conduct round-trip bus operations to one of the tracks.

3. "All decisions * * * shall * * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof." Administrative Procedure Act, § 8(b), 5 U.S.C. § 1007(b).

4. 75 Stat. 517 (1961), 49 U.S.C. § 17(5).

5. See S.Rep. No. 839, 87th Cong., 1st Sess. 2, 4, 9–10 (1961) U.S.Code Congressional and Administrative News 1961, p. 2687; H.R.Rep. No. 750, 87th Cong., 1st Sess. 3, 7 (1961).

6. Sinett v. United States, 136 F.Supp. 37, 40 (D.N.J.1955); Norfolk Southern Bus Corp. v. United States, 96 F.Supp. 756, 758 (E.D.Va.1950). We also note that

the Administrative Procedure Act, § 8 (a), 5 U.S.C. § 1007, provides that on appeal from or review of the initial decisions of hearing officers, the agency shall, with an exception not applicable here, "have all the powers which it would have in making the initial decision."

7. Curtis, Inc. v. United States, 225 F.Supp. 894, 901–902 (D.Colo.1964), aff'd 378 U.S. 128, 84 S.Ct. 1658, 12 L.Ed.2d 744 (1964); North American Van Lines, Inc. v. United States, 217 F.Supp. 837, 842–843 (N.D.Ind.1963). See also Yale Transport Corp. v. United States, 210 F.Supp. 862, 864–865 (S.D.N.Y.1962); Capital Transit Co. v. United States, 97 F.Supp. 614, 618, 621 (D.D.C.1951).

8. Baltimore & Ohio R. Co. v. United States, 298 U.S. 349, 359, 56 S.Ct. 797, 803, 80 L.Ed. 1209 (1936).

Canzano's operations pursuant to the authority granted by the Commission would be limited to an irregular-route, non-scheduled door-to-door limousine service transporting not more than eight passengers in any one vehicle, excluding the driver and children under ten years of age not occupying seats. He now has only two limousines at his disposal but professes his ability to lease others.

The examiner concluded that Canzano, by increasing the number of limousines, could so diminish the revenues of existing bus lines from racetrack and charter operations as to threaten their ability to continue adequate service even over their regular routes. The Board, however, disagreed. While recognizing that the proposed service might divert some traffic from existing bus lines, it was "not persuaded that the amount of diversion will be substantial". It also considered the proposed service to be "a significantly different type of service from the bus service offered by protestants. It is a premium service necessarily involving a different rate structure." These conclusions are assailed as being without substantial supporting evidence.

■ We do not, of course, enjoy the same freedom the Commission possessed as to a choice between the competing views of the examiner and the Board. Our function is limited to determining whether the Commission's order is within the range of its statutory authority and is predicated upon adequate findings supported by substantial evidence.[9] And while we consider the examiner's report in determining substantiality, our determination is made on the record as a whole.[10] Tested by these considerations,

the plaintiffs' contentions cannot survive.

The evidence strongly supports the Commission's holding that the diversion of traffic is not apt to be great. This, in large measure, is a result of the difference between the type of service afforded by the plaintiffs and that proposed by Canzano. The plaintiffs do not intend to provide door-to-door service, and their rolling stock consists only in large buses. Worcester County charter passengers must pay Trailways deadhead mileage to and from Boston, and Worcester Bus cannot afford to operate a trip for only eight passengers. On the other hand, a number of witnesses expressed a desire for a door-to-door service which would eliminate the need for and disadvantages of travel to and from bus terminals, and many wished to travel in small private groups and to enjoy the privilege of nonscheduled stops.

There was, too, ample testimony to justify the belief that much of Canzano's patronage would come from groups too small to afford a charter of the plaintiffs' large vehicles and from individuals desiring limousines who either preferred private automobiles to buses or who, for lack of a limousine-type service, traveled infrequently or not at all. The record also supports the thesis that he would draw from those now using limousines presently uncertificated for interstate operations.

■ The cumulative weight of these facts inveighs against the prospect of substantial diversion. Indeed, Trailways had already discontinued its racetrack service without intention to resume it, and Worcester Bus had ceased its limousine operations in the belief that there

9. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Rochester Telephone Corp. v. United States, 307 U.S. 125, 139–140, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); Interstate Commerce Comm'n v. Union Pacific Railroad Co., 222 U.S. 541, 547–548, 32 S.Ct. 108, 56 L.Ed. 308 (1912). See also Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

10. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 492–497, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Federal Communications Comm'n v. Allentown Broadcasting Corp., 349 U.S. 358, 564–565, 75 S.Ct. 855, 99 L.Ed. 1147 (1955).

was no substantial demand therefor. That Canzano's operations would afford the plaintiffs some amount of competition and occasions some diminution in their operating revenues does not justify an upset of the Commission's action.[11]

 We have already indicated our opinion that the record plainly supports the Commission's characterization of the proposed service · as "a more flexible, nonscheduled, door-to-door service for the transportation of small parties" and its conclusion that it would be significantly different from that offered by the plaintiffs.[12] And its finding that it would involve a different rate structure is supported by abundant testimony that its patrons would be willing to pay a higher rate than charged for regular bus service.

### III

The examiner felt that "the existing bus services have not been shown to be materially inadequate to meet the reasonable transportation requirements of the supporting witnesses". The Board, however, concluded divergently that "[w]here a public need for such a distinctive service is clearly demonstrated, we do not believe that the existence of reasonably adequate bus service should preclude a grant of authority", and that "such a need has been shown here." The

plaintiffs urge that the legal standard the Board employed, and the Commission accepted, is erroneous.

 The principle thus applied has been established in prior Commission decisions.[13] We consider the promulgation and application of this doctrine to fall well within the realm of its authority. Determination of the need for the proposed service is for the Commission rather than for us. "The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity."[14] Here the Commission found a need for the unique service the applicant can offer. We cannot say that the public interest is accommodated by existing service which, though reasonably adequate for those who may use it, is of a different type. The Commission's judgment on this score is entitled to the same respect it commands for other matters within its purview,[15] and we are afforded no basis for disturbing it.

### IV

Canzano proposes to enlarge his rolling stock by purchase or lease of additional limousines as the exigencies of the proposed service may require. He testified to an arrangement by virtue of which

11. Auclair Transportation, Inc. v. United States, 221 F.Supp. 328, 333 (D.Mass. 1963), aff'd 376 U.S. 514, 84 S.Ct. 966, 11 L.Ed.2d 968 (1964) ; Campus Travel, Inc. v. United· States, 224 F.Supp. 146, 148–149 (S.D.N.Y.1963) ; Capital Transit Co. v. United States, supra note 7, 97 F.Supp. at 620; Hudson Transit Lines v. United States, 82 F.Supp. 153, 157 (S.D.N.Y.1948), aff'd 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485 (1949) ; Lang Transportation Corp. v. United States, 75 F.Supp. 915, 930 (S.D.Cal.1948).

12. In Crescent Express Lines v. United States, 320 U.S. 401, 407, 64 S.Ct. 167, 170, 88 L.Ed. 127 (1943), the Court pointed out that "the special advantage to the public inherent in the use of small vehicles operating as occasion demands from door-to-door rather than between terminals, sets off the appellant's business from the service provided by regular lines operating heavier equipment."

13. Irving Nudelman Common Carrier Application, 22 M.C.C. 275 (1940), reconsidered 28 M.C.C. 91 (1941) ; David Greenfield Common Carrier Application, 43 M.C.C. 555 (1944) ; Teterboro Motor Transportation, Inc., Common Carrier Application, 47 M.C.C. 247 (1947).

14. Interstate Commerce Comm'n v. Parker Motor Freight, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051 (1945) ; See also United States v. Pierce Auto Freight Lines, supra note 9, 327 U.S. at 535–536, 66 S.Ct. 687, 90 L.Ed. 821; United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38 (1945).

15. United States v. Detroit & Cleveland Navigation Co., supra note 14, 326 U.S. at 241, 66 S.Ct. 75. See also United States v. Pierce Auto Freight Lines, supra note 9, 327 U.S. at 535–536, 66 S.Ct. 687.

several vehicles will be made available for his operations. There was evidence supporting his financial ability to pursue this method, and it was shown that he already owns considerable maintenance equipment which is utilized in a programmed manner.

To the examiner it was "not clear how applicant could provide the additional racetrack and charter services proposed herein with the limited number of vehicles at his disposal." Pointing to the apparent necessity of leasing arrangements with other limousine operators, he felt that an undesirable situation would be created from the viewpoint of an effective control by Canzano and regulation by the Commission. The Board, on the other hand, was "not convinced that the demand for service, especially at the commencement of operation, will be so great as to require applicant to augment his equipment to any substantial degree. Should he be so required in the future, however, it appears that he is financially able to add more limousines to his fleet, either by purchase or through legitimate leasing of additional equipment." The Board further concluded "that the applicant is fit and able, financially and otherwise, to conduct the proposed operation."

After the hearing, the plaintiffs presented to Division 1 of the Commission a petition seeking to reopen the proceeding for further hearing in order that they might submit additional evidence. The petition was accompanied by an affidavit charging that a limousine registered to the person from whom Canzano has arranged to lease vehicles had been used in illegal interstate operations. The Division denied the petition and although the plaintiffs do not directly attack the denial, they now complain that there is no record indication that this "evidence" was at any time considered.

 Courts do not overturn the Commission's discretion in disposing of such petitions unless a clear abuse is shown.[16] There is nothing before us to suggest the Commission abused its discretion, or that it did not weigh amply the claims supporting the petition.[17] We have considered the contention that the Commission improperly declined to receive this evidence and find no error.

For these reasons, the injunctive relief sought will be denied and the action will be dismissed.

16. United States v. Pierce Auto Freight Lines, supra note 9, 327 U.S. at 534–535, 66 S.Ct. 687; Interstate Commerce Comm'n v. Jersey City, 322 U.S. 503, 514–519, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Carolina Scenic Coach Lines v. United

States, 59 F.Supp. 336, 337 (W.D.N.C. 1945), aff'd 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398 (1945).

17. See Carolina Scenic Coach Lines v. United States, supra note 16, 59 F.Supp. 337.