Arthur SINETT, doing business as Supreme Trucking Co., Plaintiff,

v.

UNITED STATES of America, and Interstate Commerce Commission, Defendants.

Civ. A. 840–54.

United States District Court
D. New Jersey.

Nov. 17, 1955.

---

Wilentz, Goldman, Spitzer & Sills, Perth Amboy, N. J., by Arthur J. Sills, Matthias D. Dileo, Perth Amboy, N. J., on the brief, for plaintiff.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., Stanley N. Barnes, Asst. U. S. Atty. Gen., James E. Kilday, John H. D. Wigger, Special Assts. to Atty. Gen., for defendant the United States.

Edward M. Reidy, General Counsel, Nell Guinn, of Counsel, Washington, D. C., C. H. Johns, Asst. General Counsel, Washington, D. C., for defendant Interstate Commerce Comm.

Before HASTIE, Circuit Judge, FORMAN, Chief Judge, and MADDEN, District Judge.

MADDEN, District Judge.

Plaintiff, Arthur Sinett, doing business as Supreme Trucking Company (hereinafter referred to as applicant), seeks to set aside an order of the Interstate Commerce Commission which denied, in part, an application for additional operating rights.

Applicant owns four tractors and four flat bed trailers. Applicant serves one shipper, the Valentine Brick Company, (hereinafter referred to as shipper) presently a division of A. P. Green Fire Brick Company. The flat bed trailers have been tailored especially to handle the firebrick and fireclay of shipper, which constitutes the only commodity or product involved. One of the units is used in the transportation of these products for the shipper, while the remaining three units have been leased to the shipper for transportation of firebrick and fireclay to points in States which the applicant is not now authorized to serve.

Shipper utilizes railroads for, roughly, 75 to 80 per cent of its shipments, applicant's trucks for 22 to 25 per cent of its shipments, and 2 to 3 per cent of the transportation is undertaken by shipper's consignees.

By rights granted in Docket No. MC–1180, Interstate Commerce Commission, applicant presently has authority to transport as a common carrier by motor vehicle of firebrick and fireclay over irregular routes from Woodbridge, New Jersey to New York, New York, Bristol, Easton, Philadelphia, Reading, Bethlehem and Allentown, Pennsylvania. Applicant's authority was obtained with the Commission approval in 1949 from Sewaren Motor Transportation, which, in turn, obtained authority from the Commission in a certificate issued on July 19, 1941.

The present controversy started on August 8, 1951 when applicant filed an application with the Commission under section 207 of the Interstate Commerce Act, 49 U.S.C.A. § 307, for authority to operate as a common carrier by motor vehicle (1) of firebrick and fireclay from Woodbridge, New Jersey, to points in Connecticut, Delaware, Maryland, the District of Columbia and additional points in New York and Pennsylvania not presently served, and (2) in returning empty containers or other incidental facilities used in transporting firebrick and fireclay from the above destination points to Woodbridge, New Jersey over irregular routes. Joint Northeastern Motor Association and Trunk Line and New England Territory Railroads, except Chesapeake and Ohio Railway Co., filed protests, and Wagner Trucking Co., Inc., Branch Motor Express Co., and White Motor Transportation Co., Inc. intervened at the hearing in opposition to the granting of the application.

Hearing was held on the application on June 20, 1952 before an Examiner of the Interstate Commerce Commission. The Examiner recommended that applicant be granted the additional authority requested in the application by order and report dated October 27, 1952. Exceptions were filed by interveners Wagner Trucking Co., Inc., and Branch Motor Express Co., and applicant replied.

Division 5 of the Interstate Commerce Commission, by order dated September 30, 1953, accepted the recommendations of the Examiner in part only, finding that authority should be granted to the applicant to transport the empty containers, or pallets, from the destination points now authorized to be served in New York and Pennsylvania to Woodbridge, New Jersey.

Applicant, thereafter, on November 4, 1953, petitioned the Commission for a rehearing. By order dated July 30, 1954, the Commission at a general session denied the petition for reconsideration. On October 26, 1954 the applicant filed this suit to set aside the order.

In substance, the Commission found that the applicant is fit, willing and able properly to perform the service applied for but that there was no showing that the services of the existing carriers are inadequate in any respect. (See Sheet 6 of I.C.C. Report).

Before applying the law to the facts and record of this particular matter it might be well to examine generally into the function of the Commission, and then this forum as a reviewing court in their respective approaches to the problem.

The Act, 49 U.S.C.A. § 307, directs the Interstate Commerce Commission to issue a certificate to a qualified applicant who is found fit, willing, and able to furnish the proposed service and to conform to the law and the rules and regulations of the Commission when the proposed service is or will be required by the present or future public convenience and necessity.

The Commission is to be the determining agency. Congress has seen fit to impose upon that expert body the duty of determining what is best and proper in view of the public interest. Much has been said and many terms used by re-

viewing courts to describe the Commission's functions; to mention a few:

"The issue of public convenience and necessity is a matter peculiarly requiring the exercise of the Commission's expert judgment in the field of transportation." Norfolk Southern Bus Corp. v. United States, D.C.1950, 96 F.Supp. 756, 758.

and

"Its (ICC) function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies." United States v. Detroit & Cleveland Navigation Co., 1945, 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed. 38.

and

"The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity." Interstate Commerce Commission v. Parker, 1944, 326 U.S. 60, 65, 65 S. Ct. 1490, 1493, 89 L.Ed. 2051.

and

"If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order." McLean Trucking Co. v. United States, 1944, 321 U.S. 67, 87, 64 S.Ct. 370, 381, 88 L.Ed. 544.

■■ It might be well to point out that the Commission, as is the case with other agencies under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., is not bound to accept its examiner's findings and may, as here, reject his recommendations and reach different conclusions. In fact, the Commission is the body charged with the responsibility of decision and is not only at liberty but is required to reach its own conclu-sions upon the evidence. Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 285–286, 53 S.Ct. 627, 77 L.Ed. 1166; Norfolk Southern Bus Corp. v. United States, supra, 96 F.Supp. 758.

■ We come then to the next matter for general consideration, that is, the question of burden of proof. It has now become settled law by decisions too numerous to cite that the burden rests upon the applying carrier to establish, to the satisfaction of the Commission, by a fair preponderance of the evidence that public convenience and necessity require the granting of such additional authority.

■ Coming now to the next question, namely, the function of the reviewing court, and attempting to be brief, the Supreme Court, through Mr. Justice Rutledge in United States v. Pierce Auto Freight Lines, Inc., 1945, 327 U.S. 515, at pages 535–536, 66 S.Ct. 687, at page 698, 90 L.Ed. 821, dealt rather succinctly with that phase of the law when he said:

"We think the court (District) misconceived not only the effects of the Commission's action in these cases but also its own function. It is not true, as the opinion stated, that ' *  *  *  the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done."

■ In addition to there being warrant in the law and the facts for what the Commission has done it must make sufficient explication to enable the parties and reviewing court to comprehend the Commission's actions. Eastern-Central Motor Carriers Association, Inc., v. United States, 321 U.S. 194, 211, 64 S.Ct. 499, 88 L.Ed. 668.

And, as Judge Meaney of this Court in Fine & Jackson Trucking Corp. v. United States, D.C.1946, 65 F.Supp. 443, at page 444 said:

"\* \* \* it was squarely recognized that there is a duty on the Interstate Commerce Commission to make 'basic or essential findings required to support (its) order.' \* \* \* Without such basic findings, intelligent review of the proceedings of the Commission would be impossible and petitions for such review would be idle gestures."

Guided by such principles now firmly established in the law we come to a consideration of the case presently before the court. Applicant had two witnesses, both being officers of the shipper to be served. Two officers of intervenors, representing motor vehicle shipping concerns, testified opposing the application. The Examiner's report constituted 127 pages of testimony and exhibits. The Interstate Commerce Commission report and order comprised 8 sheets.

An examination of the record discloses that the Commission first explained the application and named opposing intervenors. It described the area presently served by the shipper, and the use which applicant makes of his units. It described applicant's proposal. It described the commodity of firebrick and fireclay, how transported, and what the shipper will do, or not do, if the application is granted. It described the present facilities of two intervenors. It set forth the recommendations of the Examiner. Separate exceptions by two intervenors were reviewed with applicant's reply.

The Commission then reviewed the evidence in the light of applicant's proposed service and the service afforded by opposing carriers, and drew its conclusions. From this detailed review and summary the Commission concluded that the application for additional areas to be served was not in the best interests of the public, although, the Commission did allow that portion of the application relating to pallet returns from presently served areas.

■ Applicant urges, however, that the findings are not supported by substantial evidence based on the entire record, in conformity with decided cases. We disagree with applicant. Certainly the Commission was aware of the transportation area to be served and the facilities of the various truckers. The findings amply indicate that the Commission considered all the facts of the case, explaining the application, describing the areas involved, the units available, the commodity involved, the applicant's position, opposing intervenors' position, and resulting recommendations. To our mind, the conclusions of the Commission were based directly upon the evidence presented as set forth in the report. We, also, are of the opinion that the conclusions of the Commission were determined from the record as a whole. This test, having been met, limits the extent of this court's function. United States v. Pierce Auto Freight Lines, Inc., supra.

■ The other, and remaining, test which the reviewing court must apply is, are the findings adequate, i. e., is there sufficient explication to enable the parties and reviewing court to understand the Commission's action? Eastern-Central Motor Carriers Association, Inc., v. United States, supra.

To indulge in the repetition of the Commissions' findings, or large segments thereof, would be to unnecessarily lengthen this already too long opinion. It should be sufficient, to make our point, to select a paragraph therefrom.

Sheet 6, paragraph 2, line 6:

"While it undoubtedly would be of some convenience to shipper to have applicant's proposed service available, the evidence, in our opinion, only establishes a need for the return of empty pallets to Woodbridge from the destination points now authorized to be served by applicant. *The opposing carriers are experienced in the transportation of the*

*involved commodities and there is no showing that they or other existing carriers are unable to supply all of shipper's reasonable transportation needs at points in the involved destination territory not now authorized to be served by applicant.* Shipper asserts that it would continue its private operations if the authority herein sought is not granted. *Whether or not the shipper elects to continue its current transportation methods is not basis for a grant of authority which would deprive existing carriers of the opportunity of transporting either actual or potential traffic which they normally expect to receive. In order to maintain an economical and adequate transportation system existing carriers normally should have the right to transport all traffic which they can handle in an adequate and efficient manner without the additional competition of a new operation. There is no showing here that the services of existing carriers are inadequate in any respect, and there is no assurance that the service proposed by applicant will be essentially different from that now available.* In the circumstances, we conclude that, except for the return movement of empty pallets to Woodbridge from the destination points now authorized to be served by applicant, the application should be denied." (Italics supplied.)

Although applicant admits that inadequacy of existing facilities is prerequisite to a certificate, Hudson Transit Lines, Inc., v. United States, D.C., 82 F.Supp. 153, affirmed 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485, nevertheless, the Commission found that opposing carriers could provide adequate facilities, transport the commodity, and supply reasonable transportation needs not served by the applicant, as hereinbefore demonstrated.

The applicant-plaintiff stressed two things among his many arguments. First, the alleged difficulty of handling the product of the shipper because of its nature and, second, the shipper's desire to have the personalized service.

The fallacy of the applicant's position on the first point becomes apparent to this court as it must have to the Commission by a complete examination of the record. Applicant introduced photographs showing the product on pallets, the loading by fork lift, the loading on trucks, etc., all in support of his argument for the personalized service that the existing carriers were not presently equipped to furnish. However, it does not take much imagination to liken the existing carriers' trailer equipment to the freight cars of the railroads presently carrying 75 to 80 per cent of shipper's freight. If the greater amount is carried in closed box cars what need for special equipment, and if there is a need for special equipment there is a complete failure of proof upon the part of applicant that such equipment cannot or will not be furnished by the existing carriers, and, to the contrary, one carrier appearing in opposition was found to have equipment available to handle the described traffic.

Secondly, in stressing the desire of the shipper for this personalized service the applicant-plaintiff has bottomed his argument on a false premise. The Congress has expressed its legislative intent in the creation of the Commission, that the Commission, through its expertise administration, establish a sound transportation system throughout the nation to meet the needs of the general traveling and shipping public not only today but in the generally foreseeable future. For the Commission to indulge the understandable preference and desire of the shipper for day to day personalized service would be contrary to the expressed legislative intent of Congress and would be to jeopardize existing facilities by ruinous competition and ultimately lead to chaos.

In the light of all the record, we conclude that the Commission fulfilled its duty under the Interstate Commerce Act and decided cases, requiring explication.

As was stated by the Supreme Court in Alabama Great Southern R. Co. v. United States, 1951, 340 U.S. 216, 227–228, 71 S.Ct. 264, 272, 95 L.Ed. 225:

"* * * As to the contention of appellants that the Commission's order is not supported by essential findings of fact, § 14(1) of the Interstate Commerce Act, 49 U.S.C. § 14(1), 49 U.S.C.A. § 14(1), does not require the Commission to make detailed findings of fact except in a case where damages are awarded. Manufacturers' R. Co. v. United States, 246 U.S. 457, 487, 489–490, 38 S.Ct. 383, 391, 392, 62 L.Ed. 831. The statute requires the Commission only to file a written report, stating its conclusions, together with its decision and order. This the Commission did, and the essential basis of its judgment is sufficiently disclosed in its report. Of course § 14(1) does not relieve the Commission of the duty to make the 'basic' or 'quasi-jurisdictional' findings essential to the statutory validity of an order. State of Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 125, 75 L.Ed. 291; United States v. Baltimore & O. R. Co., 293 U.S. 454, 464–465, 55 S.Ct. 268, 272–273, 79 L.Ed. 587. And the basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented. e. g., United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S. Ct. 687, 90 L.Ed. 821; State of North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760; City of Yonkers v. United States, 320 U.S. 685, 64 S.Ct. 327, 88 L.Ed. 400; United States v. Carolina Freight Carriers Corp., 315 U. S. 475, 62 S.Ct. 722, 86 L.Ed. 971. Here the Commission found, in conformity to the statute invoked, supra note 2, that the differentials prescribed are 'justified as reasonable' and 'necessary and desirable in the public interest.' And 'the report,

read as a whole, sufficiently expresses the conclusion of the Commission, based upon supporting data.' * * * Enough has been 'put of record to enable us to perform the limited task which is ours.' Eastern-Central Motor Carriers Ass'n v. United States, 321 U.S. 194, 212, 64 S.Ct. 499, 508, 88 L.Ed. 668."

We believe that the report contains adequate findings to support its conclusions. Mississippi Valley Barge Line Co. v. United States, D.C., 56 F.Supp. 1.

Accordingly, for the reasons stated, the plaintiff's complaint will be dismissed.