VINCENT MONTONE TRANSPORTA-TION, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Karn's Transfer, Inc., Intervening Defendant.

Civ. No. 7596.

United States District Court
Middle District Pennsylvania.

June 30, 1964.

Israel T. Klapper, Hazleton, Pa., Francis J. Ortman, Washington, D. C., for plaintiff.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for U. S. A.

Robert S. Burk, I. C. C., Washington, D. C., for I. C. C.

Morgan, Lewis & Bockius, Philadelphia, Pa., for Karn's.

Before GANEY, Circuit Judge, and SHERIDAN and FOLLMER, District Judges.

SHERIDAN, District Judge.

This is an action to annul, vacate and set aside certain parts of an order of the Interstate Commerce Commission of January 16, 1962, and Division 1 report of the Commission of June 8, 1961, in docket MC–117968 (Sub-No. 2).

Plaintiff is Vincent Montone Transportation, Inc. (Montone), a corporation organized and existing under the laws of the State of Pennsylvania, with its principal office in the City of Hazleton, Pennsylvania.

On December 4, 1958, Montone filed an application with the Interstate Commerce Commission, No. MC–117968 (Sub-No. 1) under § 207 of the Interstate Commerce Act, 49 U.S.C.A. § 307, for a certificate of public convenience and necessity authorizing operation, in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of trailers, semitrailers, trailer and semitrailer chassis, other than those designed to be drawn by passenger automobiles, including component parts thereof, and aluminum boxes or van bodies when moving with such trailers, except commodities requiring special equipment, in initial movements, in truckaway service, between the Highway Trailer Company (shipper) plant in Hazle Township, Luzerne County, Pa., on the one hand, and, on the other, points in Alabama, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, and West Virginia. An order of the Commission, dated April 1, 1960, based on findings of Division 1 of the

same date,[1] granted the application, except for the aluminum boxes or van bodies. The Commission found there was no need for the transportation of these because the shipper was not in production and was unable to estimate when production would begin. This part of the application was denied.

On July 14, 1959, Montone filed another application with the Commission, No. MC–117968 (Sub-No. 2) under § 207 of the Interstate Commerce Act, 49 U.S. C.A. § 307, for a certificate of public convenience and necessity authorizing operation in interstate or foreign commerce as a common carrier by motor vehicle, over irregular routes, of van bodies and cargo containers. Montone sought this authority over the same area, to wit: the site of the Highway Trailer Company plant in Hazle Township, Pennsylvania, to the same 23 States and the District of Columbia covered by the original certificate (MC–117968–Sub-No. 1).

A hearing was held on the application before an examiner of the Commission. Nine motor carriers opposed the application. The examiner recommended that plaintiff receive the authority to transport cargo shipping containers from the shipper's plant site to the 23 States and the District of Columbia. By an order of June 8, 1961, the Commission, Division 1 [2] granted the application, except that Montone was denied authority to transport to Fair Haven, Vermont; New York City; Hudson Falls and Glens Falls, New York; points in Albany, Rensselaer, Greene, Ulster, Orange, Rockland, Columbia, Dutchess, Putnam and Westchester Counties, New York; and points in Essex, Union, Bergen, Passaic, Middlesex, Hudson and Hunterdon Counties, New Jersey; and those points in New Jersey within 15 miles of Philadelphia, Pennsylvania.

The Commission denied Montone's application to these points and places because it found Karn's Transfer, Inc. (Karn's) and Arrow Carrier Corporation (Arrow), two of the protestants, held territorial authority and were able to meet at least part of the shipper's needs.[3]

Montone filed a petition for reconsideration. On January 16, 1962, the entire Commission denied the petition "for the reason that the findings of Division 1 are in accordance with the evidence and the applicable law." On March 12, 1962, this court granted plaintiff's application for a temporary restraining order against the Commission.

Plaintiff contends that the limitations imposed on the authority granted it were made without substantial evidence to support them, and that they involve errors of law, or are so manifestly arbitrary and unreasonable as to transcend the power conferred upon the Commission. Defendants answer that the Commission has wide discretion to grant or deny applications for new route authority; and that the partial denial of Montone's application was supported by adequate findings and substantial record evidence and was a lawful exercise of the Commission's discretion.

 Section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307 (a) provides:

> " * * * a certificate shall be issued to any qualified applicant therefor authorizing the whole or any part of the operations covered by the application * * * if it is found * * * that the proposed service * * * is or will be, required by the present or future public convenience and necessity; otherwise such application shall be denied: * * *."

1. In the application the point of origin was shipper's plant in Hazle Township, Pennsylvania. In the order the point of origin was Hazleton, Pennsylvania. The shipper's plant is located in Hazle Township, about one mile from the outskirts of the City of Hazleton.

2. In the Sub-No. 1 proceedings Division 1 was composed of Commissioners Murphy, Goff and Herring.
 In the Sub-No. 2 proceedings Division 1 was composed of Commissioners Walrath, Webb and Tucker.

3. Arrow did not intervene as a defendant.

The Commission has wide discretion in deciding whether additional motor service would serve public convenience and necessity. Interstate Commerce Commission v. Parker, 1945, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051. The burden is on the applicant to prove that the proposed service is required by present or future public convenience and necessity. Sinett v. United States, D.N.J. 1955, 136 F.Supp. 37, 40. The Commission is not bound to accept the examiner's findings. It is required to make its own findings based on the evidence. Id. A reviewing court will not disturb an order of the Commission if the order is within the Commission's statutory authority and is based upon adequate findings which are supported by substantial evidence. Northwest Bancorporation v. Board of Governors, Etc., 8 Cir.1962, 303 F.2d 832. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, 286, 54 S.Ct. 692, 694, 78 L.Ed. 1260. While the discretion of the Commission is wide, it is not boundless.

In Burlington Truck Lines, Inc. v. United States, 1962, 371 U.S. 156, 167, 83 S.Ct. 239, 9 L.Ed.2d 207, the Supreme Court said:

> "The Commission must exercise its discretion under § 207(a) within the bounds expressed by the standard of 'public convenience and necessity.' Compare id., at 91, 73 S. Ct. at 1002, 97 L.Ed. 1470. And for the courts to determine whether the agency has done so, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it.' Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 197, 61 S.Ct. 845, 854, 85 L.Ed. 1271. The agency must make findings that support its decision, and those findings must be supported by substantial evidence. Interstate Commerce Com'n v. J–T Transport Co., 368 U.S. 81, 93, 82 S.Ct. 204, 211, 7 L. Ed.2d 147; United States v. Carolina Freight Carriers Corp., 315 U. S. 475, 488–489, 62 S.Ct. 722, 729, 86 L.Ed. 971; United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 511, 55 S.Ct. 462, 79 L.Ed. 1023. Here the Commission made no findings specifically directed to the choice between two vastly different remedies with vastly different consequences to the carriers and the public. Nor did it articulate any rational connection between the facts found and the choice made."

■■ Cargo shipping containers are used for loading commodities on ships at dockside and are sold to distributors, steamship lines and trucking and freight companies. Thus, the limitations placed on Montone are significant because the points excluded from its certificate roughly embrace the areas around New York, Newark and Philadelphia, which are major ports. The Commission found that Montone offered improved service, but refused to authorize the service in the areas served by Karn's and Arrow. In its Sub-No. 2 report the Commission stated:

> "The manufacture of large metal cargo shipping containers has only recently commenced at shipper's Hazleton plant, * * *. Accordingly, we must determine whether or to what extent shipper's transportation requirements can be met by existing carriers. To assure prompt and dependable service, it is essential that shipper have the use of a carrier based at Hazleton and able to furnish it with equipment on short notice. Generally speaking, the service available from the opposing regular-route motor carriers not based at Hazleton is too limited territorially to be conveniently utilized, By this we mean (1) that shipper should not be under the necessity of using five or six motor carriers for the piecemeal distribution of its product; and (2) that it does not

appear that shipper would receive as efficient service from carriers used only irregularly when particular shipments are destined to particular points on their regular routes as it would from a carrier territorially authorized to meet the bulk of its requirements and regularly providing it with service. On the other hand, both Arrow and Karn maintain terminals at Hazleton, operate flatbed equipment, and hold substantial territorial authority in New York and New Jersey. Both are in a position to meet part of shipper's needs, and in the absence of a clear showing that their services would be inadequate, we are not justified in authorizing a competing operation. We conclude, therefore, that a need has been established for applicant's proposed operations to the extent indicated in our findings."

We think the Commission was in error. The mere absence of a clear showing of the inadequacy of existing services does not justify the limitations placed on Montone. The conclusion to be drawn from the Commission's report is that in no case will application be granted if it will result in competition with existing carriers. This is not the law. The introduction of a competitive service may be in the public interest. In Schaffer Transp. Co. v. United States, 1957, 355 U.S. 83, 90–91, 78 S.Ct. 173, 178, 2 L.Ed.2d 117, the Supreme Court said: "To reject a motor carrier's application on the bare conclusion that existing rail service can move the available traffic, without regard to the inherent advantages of the proposed service, would give one mode of transportation unwarranted protection from competition from others." In Dance Freight Lines v. United States, E.D.Ky.1957, 149 F.Supp. 367, the court reached the same conclusion in a case involving motor carriers:

"Relying on a statement in Hudson Transit Lines v. United States, D.C., 82 F.Supp. 153, 157, affirmed 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed.

485, and numerous holdings of the Commission, pointing out that the Courts and the Commission 'have recognized inadequacy of existing facilities as a basic ingredient in the determination of public "necessity" ', the plaintiffs contend that the order of the Commission in this case cannot stand because there was no finding that the present service was inadequate. However, in the same case the Court further said in language more apposite to the question herein presented, 'This does not mean that the holder of a certificate is entitled to immunity from competition under any and all circumstances. Chesapeake & O. R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824. The introduction of a competitive service may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing service. Interstate Commerce Commission v. Parker, supra.' "

The factors which motivated the Commission in weighing the scales in favor of the existing services do not appear. There is no finding of prejudice or adverse effect on the existing carriers, neither of which has ever rendered the proposed service. The Commission made no specific findings directed to its choice between Montone and the existing carriers, other than the conclusion that the proposed service would be competitive and that there was not a clear showing of an inadequacy of present service. This was insufficient, particularly in view of the positive findings that the evidence established a need for the flexible single line service of Montone. It is not disclosed whether the limitations would force Montone out of business, as it contends, and, if it did, the effect on the public with respect to deliveries in those parts of the 23 States and the District of Columbia not serviced by Karn's and Arrow.[4] The Commission may be justified in concluding that the

4. In its Petition for Reconsideration Montone told the Commission:

"* * * 70 per cent of the revenue of applicant during the year May, 1959,

existing carriers should be protected, and that in the circumstances the present or future public convenience and necessity require that Montone's application be limited, but in order to review the Commission's action, this court must know the basis for it. The principles laid down by the Supreme Court in Burlington Truck Lines, Inc. v. United States, 1962, 371 U.S. 156, 167, 83 S.Ct. 239, supra, are controlling.

That portion of the order of the Commission which denies Montone the authority to transport shipping cargo containers to Fair Haven, Vermont, New York City, Hudson Falls and Glens Falls, New York, and points in Albany, Rensselaer, Greene, Ulster, Orange, Rockland, Columbia, Dutchess, Putnam, and Westchester Counties, New York, and points in Essex, Union, Bergen, Passaic, Middlesex, Hudson, Hunterdon Counties, New Jersey, and those points in New Jersey within 15 miles of Philadelphia, Pennsylvania, must be set aside and the cause remanded to the Commission for action in accordance with this opinion.

to May, 1960, was received from transporting cargo shipping containers and 40 per cent of its revenue was derived from the same source during the period May, 1960 to May, 1961. The larger majority of the cargo shipping containers during the aforesaid period was transported from Hazleton to the port destinations in Newark, New Jersey and New York City. To now deprive applicant from continuing such operations would make it practically impossible for it to continue to transport the commodities as presently authorized in its Certificate of Public Convenience and Necessity, MC–117968."