**WORSTER MOTOR LINES, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America, Interstate Commerce Commission, and Midwest Coast Transport, Inc., Defendants.**

**Civ. A. No. 934.**

United States District Court
W. D. Pennsylvania.
Nov. 27, 1963.

Knox, Weber, Pearson & McLaughlin, Wm. W. Knox, Erie, Pa., for plaintiff.

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., Robert Tucker, Asst. U. S. Atty., Robert Humel, U. S. Dept. of Justice, Washington, D. C., for United States.

Robert W. Ginnane, Thomas H. Ploss, Washington, D. C., for Interstate Commerce Commission.

Quinn, Leemhuis, Plate & Dwyer, Howard N. Plate, Erie, Pa., McNees, Wallace & Nurick, James W. Hagar, Harrisburgh, Pa., for Midwest Coast Transport, Inc.

Before STALEY, Circuit Judge, and WILLSON and MILLER, District Judges.

WILLSON, District Judge.

This action was brought by Worster Motor Lines, Inc., (Worster) to permanently enjoin, annul and set aside an Order of the Interstate Commerce Commission. A three judge court was convened to hear and determine this matter pursuant to the provisions of Section 2284 of Title 28 United States Code.

The Midwest Coast Transport, Inc., (Midwest) sought certificates of public convenience and necessity authorizing it to operate as a common carrier motor vehicle over irregular routes in interstate commerce:

(a) In Sub 118 of frozen foods from Caribou, Maine to points in New York State and in the midwest. The exact routes will be mentioned hereafter.

(b) In Sub 126 of frozen foods from Aroostook County, Maine to various points in the midwest, and foodstuffs from Milton, Pennsylvania to points in New England.

Several protestants opposed each application. One common to both was plaintiff herein.

In Sub 118 the examiner had concluded that no real need existed for the

proposed service, and that public convenience and necessity had not been proved, and therefore, recommended that the application be denied. To this Midwest filed exceptions to which Worster and other protestants replied, and the matter was considered by the Commission which entered an Order in which the examiner was reversed, and it found that public convenience and necessity did require the issuance of authority covering frozen foods from Caribou, Maine to points in southeastern New York, and of frozen potatoes and frozen potato products from Greencastle, Pennsylvania to Waseca, Minnesota.

In Sub 126 the examiner, after partially denying the petition, recommended that applicant be granted irregular route common carrier authority to transport frozen foods. The Commission affirmed, holding that present and future public convenience and necessity required the operation by Midwest as a common carrier over the certain specified routes.

Petitions for reconsideration were filed by protestants Worster and Refrigerated Food Express, Inc., (RFX). The proceedings were reopened on protestants' petitions and a final report was issued by the Commission under date of January 4, 1963, granting Midwest rights as follows:

To operate in interstate commerce as a common carrier by motor vehicle over irregular routes, (1) in Sub 118 of frozen potatoes and frozen potato products from Greencastle, Pennsylvania to Waseca, Minnesota, and (2) in Sub 126 of (a) frozen potatoes and frozen potato products from Presque Isle and Easten, Maine to points in New York, New Jersey, Pennsylvania and in the midwest, and (b) frozen prepared foods from Milton, Pennsylvania to points in New England.

In reaching its findings and conclusion the Commission interpreted Worster's common carrier rights to the effect that Worster does not hold certificates covering the carriage of frozen potatoes and frozen food products.

The nub of plaintiff's complaint is that in granting the application of Midwest for certificates of public convenience and necessity the Commission partially revoked plaintiff's authority. Plaintiff states the issue as follows:

"Did the Commission properly decide in these cases in which Worster was only a protestant, that its authority to transport frozen vegetables as granted prior to the amendments to the Interstate Commerce Act contained in the Transportation Act of 1958 did not include the right to transport frozen potatoes and frozen food products?"

Plaintiff, in its complaint, says, inter alia, that its certificates were issued before the Transportation Act of 1958; that it was denied due process when its operating authority was restricted by interpretation in a case in which it was only a protestant; and that it was denied due process when its certificates were partially revoked without notice and without full opportunity to be heard.

It is not the function of this Court to examine the evidence before the Commission in an application of this kind and substitute its judgment for that of the Commission. The weight of the evidence is for the Commission. This Court must sustain the Commission if its findings are supported by substantial evidence. C. I. R. v. Fisher, 327 U.S. 512, 66 S.Ct. 686, 90 L.Ed. 818, 1946; Yourga v. United States, 191 F.Supp. 373 (W.D.Pa., 1961). It is also agreed that the function of this Court is limited. "Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene." United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821, 1946. The Supreme Court of the United States has said in Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456, 1951, that the findings of the Commission must be sustained if supported by substantial

evidence viewing the record as a whole. If so supported the expertise of the Interstate Commerce Commission is entitled to great deference and gives rise to a presumption of validity. East Texas Motor Freight Lines, Inc. v. Frozen Food Express, 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 730, 1956.

Applying these principles it is our opinion that the record shows that the Commission's finding that public convenience and necessity required the issuance of certificates to Midwest was based on substantial evidence. Plaintiff does not quarrel with the Commission's finding and report in this regard. It is because the Commission interpreted Worster's authority in making its decision in favor of Midwest in Sub 118 and Sub 126 that Worster filed the instant complaint in this Court. The Commission said, inter alia, that Worster has authority to carry fresh and cold packed vegetables between Boston and New York. It then said, referring to Worster:

"In its application for 'grandfather' authority under Section 7 of the Transportation Act of 1958, * * * it was granted authority, as pertinent to transport frozen vegetables between all points in New York and Maine. It does not, however, offer this service for the transportation of the frozen potato products involved herein because it does not consider them to have been exempt commodities on the critical date specified in the Transportation Act of 1958."

In its discussion the Commission stated that the question presented is whether the existing carriers can render the shipper a complete transportation service adequate for its needs. It mentioned that Cole's Express, in conjunction with other carriers including Worster and RFX, offers a joint-line service between Caribou and the points involved, but the shipper's evidence as to the commodities involved, the likelihood of damage to them if interchanged physically and the necessity for rapid service because of unforeseen changes in its customers' purchase patterns indicates that a through-trailer, single-line service is needed. The Commission then continues in speaking of the Birds Eye Products at Caribou and in referring to Worster and RFX as follows:

" * * * the latter two carriers clearly cannot furnish the shipper a complete transportation service between Caribou and the New York points involved because they do not possess adequate authority to transport all of the products * * *. There is no doubt that the frozen peas produced there can be carried under RFX's authority to transport frozen vegetables and Worster's 'grandfather' authority. However, a part of the shipper's production at its Caribou plant consists of frozen prepared potato products, and it intends to produce frozen baby foods and other products there in the future. We do not believe that these prepared products can be transported under the authority presently held by either RFX or Worster."

In the report of the Commission on reconsideration issued January 4, 1963, the Commission sets forth the contentions of Worster. They are identical to those raised in the complaint in the present case. The main issue plaintiff now relies on was raised there, i. e., that in determining the scope of its operating authority, the Commission's Order amounted to a partial revocation of its operating rights. This, says Worster, amounts to lack of due process as it appeared in the proceedings before the Commission as a protestant only. Worster alleges that it is only in a plenary proceeding or in a proceeding especially for that purpose that the scope of its operating rights should be interpreted or defined by the Commission.

■ It is our opinion that there was ample authority for the Commission to issue the operating rights it did to Midwest even if it had not interpreted or defined the scope of Worster's authority. Assuming arguendo that Worster did have authority to carry frozen potato products, nevertheless, the Commission

has found that the shippers required single-line service in refrigerated cars and that Midwest had such equipment and was able to offer such service. Worster's was a joint service unsatisfactory to the shippers as quick single-line service was a necessity in order to keep spoilage of the product in transit to a minimum. It must be conceded, of course, that this Court has no way of determining how much weight the Commission gave to the lack of authority which it found in Worster. But it is not necessary for the Court to make such a finding or even speculate on it. It is believed that necessarily the scope of a protestant's authority is subject to interpretation when it protests an application which is pending before the Commission. The Commission must find that the public convenience and necessity require the requested operating rights. An important factor for the Commission to consider is whether the operating rights which are applied for are already covered by the certificates of the protestant. As it says in its report of January, 1962, "We have consistently held that existing motor carriers should be afforded an opportunity to serve a shipper before a new carrier is authorized to enter a territory." In the opinion of the Court this, of necessity, requires the Commission to review the scope of the authority of each competing carrier who protests an application.

In an opinion written by Judge Ganey in Robbins v. United States, 204 F.Supp. 78, 81 (E.D.Pa., 1962), it was held that:

"* * * [o]ne of the basic ingredients in the determination of public convenience and necessity is the adequacy of existing service. * * * And the burden of producing evidence to show that 'the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity' is on the applicant. * * * Since the evidence of the adverse effect on them is generally within their control, the protesting carriers should come forward with information of that nature to persuade the Commission to deny the certificate." (citing cases)

See Hudson Transit Lines, Inc. v. United States, 82 F.Supp. 153, (S.D.N.Y., 1948), aff'd 338 U.S. 802, 70 S.Ct. 59, 94 L. Ed. 485.

And further, it is to be noticed that it is conceded by Mr. Knox that in its application for reconsideration Worster did not suggest that it wished to offer evidence on the merits of the Midwest application or on the scope of Worster's authority. The reconsideration was sought on the ground that the previous Order of the Commission was incorrect as a matter of law. That is the same position that Worster presents to this Court and we find it to be without merit.

And finally, plaintiff Worster not complaining of the issuance of the Midwest authority per se based on the merits of the application, nevertheless, is fearful in this case that the Commission has in a backhanded manner, so to speak, interpreted the scope of its authority which amounts to a revocation of that authority. As Mr. Knox says in his brief in summary:

"We wish again to reiterate that if the Commission had stated that Worster's authority, even if taken for granted, would not have interfered with the grant of authority to Midwest Coast Transport, we would have little (to) complain about in this Court. Why didn't the Commission say so and not leave Worster's authority under a cloud which becomes res judicata without Worster ever having had a chance fully to develop the background of its authority in a plenary proceeding?"

This contention finds support in the dissenting opinion of Commissioner Webb in the 1962 report where he said:

"In my opinion, such a finding is tantamount to a partial revocation of the operating authority of RFX and of all other carriers holding similar operating authority."

608

However, it seems to this Court that the apprehension of plaintiff that the Commission's consideration of the scope of its authority may be res judicata is not warranted. The attorney appearing in this Court for the Interstate Commerce Commission forthrightly indicated to the Court in colloquy that the decision of the Commission in Sub 118 and Sub 126 does not preclude a plenary proceeding by Worster before the Commission if Worster so desires to secure a definitive interpretation of its authority. In fact, Mr. Knox has already filed a Sub 66 proceeding asking for an interpretation of its certificate as covering frozen prepared foodstuffs which is pending before the Commission. This Court assumes as shown on the record that the Commission will stand by the statements of its counsel made in this Court. For instance, the colloquy in part is as follows:

"Judge Staley: * * * is it your view * * * on behalf of the Commission * * * that Worster can apply for a plenary proceeding for a definitive interpretation of its certificate as to these matters?

"MR. PLOSS: Yes, your Honor. "JUDGE STALEY: Even in the face of what allegedly is this interpretation in this proceeding?

"MR. PLOSS: Yes, indeed, your Honor."

It must not be overlooked that the Interstate Commerce Commission under the law acts on a finding of public convenience and necessity. This necessarily implies that the necessity of the public may change from time to time. The Commission, therefore, is not ruled by res judicata as that term is used by courts as a rule of precedence. "(T)he power of an administrative body or agency to reconsider its own findings or orders has no relation to, and is not affected by, the doctrine of res judicata." 50 C.J.S. Judgments, § 607. "Stated more simply, an administrative agency is not bound by its own prior determinations, though the courts may take these prior determinations into consider-

ation." State Airlines, Inc. v. Civil Aeronautics Board, 84 U.S.App.D.C. 374, 174 F.2d 510, 518 (1949). See also Pennsylvania Water & Power Co. v. Federal Power Commission, 74 U.S.App.D.C. 351, 123 F.2d 155, 162 (1941).

Upon a careful review of the record, we are satisfied that the Commission acted on substantial evidence well within its powers, and that its Orders must be affirmed. The complaint is directed to be dismissed.