**BROTHERHOOD OF RAILROAD TRAINMEN, F. A. Purcell and Charles Miller, Plaintiffs,**

v.

**UNITED STATES of America, Interstate Commerce Commission, Public Service Coordinated Transport and Somerset Bus Co., Inc., Defendants.**

Civ. A. No. 38663.

United States District Court
E. D. Pennsylvania.

Sept. 15, 1967.

Brandon, Shearer & Flaherty, Pittsburgh, Pa., for plaintiffs.

Raspin, Espenshade, Heins, Erskine & Stewart, Philadelphia, Pa., for defendants.

Before KALODNER, Circuit Judge, and BODY and FULLAM, District Judges.

## OPINION

PER CURIAM:

On November 18, 1964, the Interstate Commerce Commission entered an order approving the acquisition of the operating rights of Royal Blue Coaches, Inc. ("Royal Blue") by Public Service Coordinated Transport ("Public Service"). The Internal Revenue Service had previously foreclosed a tax lien against Royal Blue, and sold the rights to Public Service at a public sale.

This action has been brought by certain former employees of Royal Blue and their labor union, pursuant to 28 U.S.C. § 2284, challenging the ICC order of approval on two principal grounds: (1) That the acquisition violates the antitrust laws; and (2) that the Commission failed to im-

pose conditions for the protection of employees of Royal Blue affected by the transaction.

■ The scope of our review is limited to determining whether the Commission's findings and conclusions are supported by the evidence and are not arbitrary or capricious. Legge v. United States, 244 F.Supp. 878 (W.D.Pa.1965); Alabama Highway Express, Inc. v. United States, 241 F.Supp. 290 (N.D.Ala.), aff'd, 382 U.S. 106, 86 S.Ct. 255, 15 L.Ed.2d 190 (1965); Worster Motor Lines, Inc. v. United States, 226 F.Supp. 603 (W.D.Pa. 1963).

■■ There is clearly no merit to plaintiffs' antitrust argument. The Commission was not bound by the standards imposed by the antitrust laws, McLean Trucking Co. v. United States, 321 U.S. 67, 85–86, 64 S.Ct. 370, 88 L.Ed. 544 (1944), but was required merely to consider competitive factors along with the various other relevant factors. Minneapolis & St. Louis Ry. Co. v. United States, 361 U.S. 173, 186, 80 S.Ct. 229, 4 L.Ed.2d 223 (1959); Seaboard Air Line Railway Company v. United States, 382 U.S. 154, 86 S.Ct. 277, 15 L.Ed.2d 223 (1965). The record is clear that the Commission fulfilled its obligations in this respect.

■■ Plaintiffs' challenge based upon the failure of the Commission to impose conditions for the protection of affected employees of Royal Blue presents a closer question. Among the four factors which Congress has directed the Commission to take into account in considering the approval of acquisitions under these circumstances is "(4) The interest of the carrier employees affected." 49 U.S.C. § 5(2) (c). No fixed rule or formula is provided, and each case must be decided on its own facts. The Short Line, Inc.-Purchase-New England Transportation Co., 75 MCC 33 (1958). While the requirements in the case of motor carriers are not expressly mandated as in the case of railway workers, American Buslines, Inc. v. United States, 253 F.Supp. 481 (D.D.C.), aff'd Amalgamat-

ed Transit Union v. United States, 385 U.S. 38, 87 S.Ct. 240, 17 L.Ed.2d 35 (1966), the Commission has properly concluded that it was the intent of Congress that affected motor carrier employees are to receive fair and equitable treatment, and that they should not be denied protection similar to that prescribed by law for railroad employees, except for stated reasons based upon the evidence in the case. Amalgamated Ass'n of Street Elec. Ry., etc. v. United States, 221 F.Supp. 958 (D.D.C.1963).

In the present case, it may well be, as counsel for the Commission argues, that no protective conditions could have been imposed, either because of the provisions in the collective bargaining agreement between Public Service and another labor organization, or for other reasons. But that argument is beside the point, since the Commission expressly upheld the examiner's conclusion that it was not necessary to consider this question, because there were no employees affected by the proposed acquisition. The issue before us, therefore, is not whether the Commission could reasonably have decided not to impose protective conditions, but rather whether the Commission could reasonably decide that there were no affected employees, and therefore that there was no need to consider the question of protection.

The evidence on this issue is not as complete or explicit as one might wish. It appears that the Internal Revenue Service had long held substantial tax liens against Royal Blue, and that operations were being carried on by Royal Blue pursuant to an arrangement for weekly payments on account of the tax liability. These arrangements had been negotiated with a Mr. Gall, who appears to have been the principal figure in the ownership and operation of Royal Blue. On February 20, 1963, Mr. Gall died, and on February 21, 1963, on the basis of existing default in the instalment payments, IRS foreclosed its lien and seized the assets of Royal Blue. Between that date and April 30, 1963, when the public sale was held, the record discloses only

that operations were continued "sporadically." It appears that as of April 30, 1963, there were still 17 employees on the Royal Blue payroll, some of whom worked full-time until that date, others of whom had been cut back to two or three days per week, about a month earlier.

[redacted] After carefully considering the entire record, it is our opinion that, while reasonable minds might differ on the question, the Commission's conclusion that the remaining Royal Blue employees lost their jobs because of the business failure of Royal Blue and the death of its principal owner, rather than because of the acquisition by Public Service, is not arbitrary or capricious, or without evidentiary support. Accordingly, the order of the Commission will be affirmed, and the complaint dismissed.